IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CHRISTOPHER A. ENRIQUEZ, #615849 | § | |
| VS. | § | CIVIL ACTION NO. 6:11CV320 |
| JOHN NOLEN, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff Christopher A. Enriquez, proceeding *pro se* and *in forma pauperis*, a prisoner confined in the Texas prison system, filed this civil rights lawsuit under 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

**I.    FACTS**

Plaintiff filed his original complaint on June 20, 2011. In it, he asserts that while he was incarcerated in the Coffield Unit[1] of the Texas Department of Criminal Justice ("TDCJ"), he was in administrative segregation ("AdSeg") status, meaning in pertinent part that he had to be handcuffed every time he was taken out of his cell. *See* Declaration of Christopher A. Enriquez (the "Enriquez Decl.") attached to Plaintiff's complaint. TDCJ policy required such handcuffing to be behind-the-back. Plaintiff complained that because of his obesity and short arms, handcuffing behind the back caused circulation to cut off to his hands and pain to his shoulders. *See* Complaint at 4a. He alleges

---

[1]    Plaintiff is currently incarcerated at the Ramsey Unit, having transferred there in or around May 2011.

1

that on or about 2005, Unit physician Dr. Orig issued him a "front-cuff pass" ("FCP") for a six-month period, which the doctor renewed each six months for the next five years. Enriquez Decl. at 1. He further alleges that in early October 2010, he was informed he had a sick call appointment though he did not know the reason for it. *Id*. However, officers did not come to escort him to the appointment and it was recorded as a "refusal." *Id*. He submitted a sick call request to re-schedule the appointment, "whatever . . . [it] was for." *Id*.

On or about October 26, 2010, he was escorted to the re-scheduled appointment with his hands cuffed behind his back, though his FCP was not set to expire until November. He was seen by Physician's Assistant Nolen, who asked him why he was there to see medical. *Id*. In part, Plaintiff alleges, P.A. Nolen asked him why he had been issued an FCP to begin with, and Plaintiff explained the background to him. *Id*. Plaintiff further alleges that P.A. Nolen informed him that Dr. Orig was no longer with the Coffield Unit medical department and that P.A. Nolen would not renew the FCP, though he did not conduct an examination of Plaintiff. *Id*. at 2. P.A. Nolen suggested to Plaintiff that he ask the guards escorting him out of his cell to "double-cuff" him as a means of alleviating any pain. *Id*. However, Plaintiff alleges, there is no "double-cuff" policy allowing such a procedure. *Id*.

Plaintiff further alleges that he submitted Step 1 and Step 2 grievances on this transaction. The first was investigated by Practice Manager Pam Moore-Pace and the second by Program Administrator Guy Smith. *Id*. at 2-3. Neither of them directed that Plaintiff's FCP be renewed or directed any examination of Plaintiff. *Id*.

Plaintiff therefore filed his complaint naming P.A. Nolen, Ms. Moore-Pace and Mr. Smith as Defendants and alleging that he has been denied medical care. He seeks declaratory relief and

compensatory and punitive damages.

On September 29, 2011, the Court conducted an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Ginger Lively, Warden William Motal and Nurse Kathy Grey testified under oath about prison policies and information contained in the Plaintiff's prison records.

At the *Spears* hearing, Plaintiff repeated the substance of his complaint. He added that P.A. Nolen did not refuse to discuss his FCP on the basis that Plaintiff did not include that purpose in his request for a sick call, but refused to talk about it at all. Plaintiff believed he could raise any medical issue he wanted at the appointment because P.A. Nolen asked him what he was there for. However, when he raised the FCP issue, P.A. Nolen would not renew the pass, stating that Dr. Orig was no longer on the Unit.

Warden Motal testified that he was not aware of any actual policy regarding front-cuff passes but his experience was that any time medical prescribed an FCP, it would be honored. Such a pass was given effect by using a security belt on the offender and running the handcuffs through that. Absent such an arrangement, the standard practice is to handcuff prisoners behind the back.

Nurse Grey testified that Plaintiff's medical records revealed that the reason for the visit to medical on October 26, 2010, was for a rash, not for renewal of an FCP and that Plaintiff's sick call requests prior to that date did not reflect such a request. She also testified that the record showed

a request for FCP renewal on December 24, 2010, but no indication that the pass was actually renewed. She further testified that there were a few entries dated after the October 2010 sick call referring to an FCP, including on February 9, 2011, in which Plaintiff asked for renewal; on April 2, 2011, when Plaintiff was seen in medical for shoulder pain and was referred for an FCP; and on April 19, 2011, when a medical provider saw Plaintiff following his referral but noted that Plaintiff "has no problems, ran out of medications," and therefore there was no change in his medical alert code or to restrictions. Nurse Grey also testified that Plaintiff was being seen in the Chronic Clinic because of high blood pressure and cholesterol, and had been restarted on medications for those conditions.

In response to the Court's inquiry as to what problems Plaintiff has continued to have because of the lack of an FCP, Plaintiff testified that he is no longer being handcuffed on the Ramsey Unit since he transferred from the Coffield Unit. He is no longer in AdSeg as of his transfer around May 2011. However, while he was in AdSeg at the Coffield Unit, he typically was placed in handcuffs at least when escorted to and from the showers and to and from recreation, and uncuffed during those times. Therefore he was actually placed in handcuffs about four times a day. However, he was only subjected to handcuffing behind his back between about October 26, 2010, and his transfer to the Ramsey Unit in May 2011. Because he no longer is in AdSeg, the handcuffing is no longer an issue. He also testified that he had not suffered any continuing problems as a result of having been handcuffed behind his back for that period of time.

Regional Grievance Supervisor Ginger Lively testified that Plaintiff has exhausted his grievance. She submitted Plaintiff's grievance, classification and medical records for review. Plaintiff assented to the Court's review of these records for the purpose of this lawsuit.

The Court has reviewed Plaintiff's medical records and finds that the testimony of Nurse Grey is substantiated. The notation for the October 25, 2010, sick call at the Coffield Unit does not reflect any request for an FCP renewal. The first medical record mentioning an FCP was on December 24, 2010, when Plaintiff filed a request for a renewal, followed by similar requests on January 7 and 18 and February 7, 2011. On February 8, 2011, a nursing clinical note reflects that Plaintiff had right shoulder and arm numbness and needed an FCP; it referred Plaintiff for a doctor appointment. On March 29, 2011, he was scheduled for a sick call on complaints of shoulder pain. The need for a referral for FCP evaluation was repeated in a nursing progress note on April 2, 2011. However, in a Provider Chronic Clinic progress note signed by Physician's Assistant Glen York on April 19, 2011, it was noted that Plaintiff "has no complaints, ran out of medications." There is no mention of any shoulder problem and no change in any medical alert codes or restrictions. Medical record entries beginning in May 2011 reflect Plaintiff's transfer to the Ramsey Unit.

## II. DISCUSSION AND ANALYSIS

To state a constitutional claim for relief under § 1983, a plaintiff must allege a right secured by the Constitution or the laws of the United States and a violation of that right by one or more state actors. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994). To be a state actor subject to liability under Section 1983, the defendant must act "under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia." 42 U.S.C. § 1983. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61

S. Ct. 1031, 85 L. Ed. 1368 (1941)). The Supreme Court has formulated a two-part approach to the issue of state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible . . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). In addition, "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lemons v. Swann*, 412 Fed. Appx. 672, 673 (5th Cir. 2011) (per curiam) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)).

Although Plaintiff complains of a denial of medical care, it is clearly aimed solely at the specific instance in his complaint, namely, the sick call with P.A. Nolen on October 26, 2010, and the subsequent reviews to his Step 1 and Step 2 grievances. He has made no complaint about medical care otherwise and his medical record objectively shows that he has received frequent medical care at both the Coffield and Ramsey Units.

To state a claim under the Eighth Amendment for denial of medical care, a Plaintiff must allege acts or omissions "sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Norton v. Dimanzana*, 122 F.3d 286, 291 (5th Cir. 1997). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Norton*, 122 F.3d at 291. It occurs when two requirements are met. "First, the deprivation alleged must be,

objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (internal citations and quotations omitted). Second, the prison official must subjectively know of and disregard a substantial risk to the inmate's health or safety. *Id*. at 839-40.

In this light, deliberate indifference is "an extremely high standard to meet," and requires a showing that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. TDCJ-ID*, 239 F.3d 752, 756 (5th Cir. 2001). "An incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." *Id*. (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Additionally, "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Domino*, 239 F.3d at 756 (citing *Estelle*, 429 U.S. at 107). Furthermore, "the 'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." *Domino*, 239 F.3d at 756 (citing *Farmer*, 511 U.S. at 838). Neither an incorrect diagnosis nor mere negligence nor even medical malpractice rises to the level of a constitutional violation. *Id*.; *see also Neely v. Khurana*, 2009 WL 1605649, at *8 (N.D. Tex. June 5, 2009).

In this case, even crediting Plaintiff's allegations and testimony as true, P.A. Nolen's actions are best described as the exercise of medical judgment. Plaintiff presented to P.A. Nolen at sick call without a specific reason other than Plaintiff had been summoned to sick call previously, did not know the reason why, missed the appointment because no escort took him, and subsequently made

7

up the appointment. He took the opportunity to discuss several medical issues with P.A. Nolen, including his medications and other treatment, and did not take issue with any of that. Although he contends P.A. Nolen did not examine him before refusing to renew his FCP, at most that states a claim for negligence or medical malpractice, neither of which rises to a violation of deliberate indifference. *Domino*, 239 F.3d at 756. Furthermore, it is clear that there was no pattern of any deliberate indifference toward Plaintiff by the medical department at the Coffield Unit. A number of the medical progress note entries over the ensuing months included examinations for shoulder pain complaints and clearly contemplated whether an FCP was needed. None was ever prescribed, particularly after the April 19, 2011, examination in which Plaintiff identified "no problems" medically.

As to Ms. Moore-Pace and Mr. Smith, Plaintiff is suing them because of their position of supervisory review. That is, they held review authority over P.A. Nolen's action and did not act according to Plaintiff's desires. His claim essentially falls under the doctrine of *respondeat superior*. However, the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978); *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. In fact, the Supreme Court recently held that the term "supervisory liability" in the context of a § 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, - - - U.S. - - - -, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). There, the Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge or acquiesced in their subordinate's misconduct. *Id*. As a result of *Iqbal*,

courts have questioned whether supervisory liability remains an option at all in § 1983 cases. *See Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010); *Parrish v. Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010).

The United States Court of Appeals for the Fifth Circuit has not yet interpreted this holding of *Iqbal*. Nonetheless, under existing Fifth Circuit jurisprudence, a supervisor may only be held liable if one of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither of these two conditions contradict *Iqbal* but are consistent with the Supreme Court's holding that mere knowledge or acquiescence is insufficient to create supervisory liability in the § 1983 setting. Here, Plaintiff has not alleged nor shown that either Ms. Moore-Pace or Mr. Smith met either of these criteria.

Finally, Plaintiff admitted during the *Spears* hearing that he had suffered no injury from the period of time between November 2010 and May 2011 that he was regularly handcuffed behind the back. Actual injury is a prerequisite for maintaining a lawsuit under § 1983. *Lemons*, 412 Fed. Appx. at 673.

On those bases, Plaintiff's complaint does not state a claim upon which relief may be granted. It is therefore

**ORDERED** that Plaintiff's complaint is dismissed with prejudice for failure to state a claim upon which relief may be granted and as frivolous pursuant to 28 U.S.C. § 1915A(b)(1). It is further

**ORDERED** that all motions not previously ruled on are hereby **DENIED**.

So **ORDERED** and **SIGNED** this **2** day of **October, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE